

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
ADEWUMI OGUNTUNJI,

                                    Petitioner,

                    -against-

D.A. ARTUS,

                                    Respondent.
-----------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**
05-CV-1240 (ADS)

**APPEARANCES:**

**ADEWUMI OGUNTUNJI**
02A5331
Collins Correctional Facility
P.O. Box 340
Collins, New York 14034-0340

**KATHLEEN M. RICE, DISTRICT ATTORNEY
COUNTY OF NASSAU**
Attorney for the Respondent
262 Old Country Road
Mineola, New York 11501
          By:    Margaret E. Mainusch, Assistant District Attorney

**SPATT, District J.**

          Adewumi Oguntunji (the "petitioner") petitions this Court for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254.  For the reasons set forth below, the petition is

denied.

## I. BACKGROUND

On December 25, 2001, the petitioner was charged with two counts of robbery in the first degree, and one charge of sexual abuse in the first degree. No criminal complaint was filed for the sexual abuse charge. On February 27, 2002, the petitioner was charged with four counts of grand larceny in the fourth degree and two counts of forgery in the second degree. Originally, the petitioner was charged by six separate felony complaints. On August 12, 2002, the petitioner appeared with counsel, waived his right to be prosecuted by indictment, agreed to be prosecuted by Superior Court Information and plead guilty to certain charges. The charges against the petitioner arose from four separate incidents.

### A. The Charges

On July 28, 2001, at the Macy's Department Store in the Hicksville Broadway Mall where he worked, the petitioner allegedly entered the stock room and removed a credit card from another employee's purse. The credit card was used to make several purchases at various locations. On August 10, 2001, also that the Macy's where he worked, the petitioner allegedly removed two credit cards from another employee's pocketbook and used those cards to purchase hundreds of dollars worth of merchandise. On August 25, 2001, the petitioner allegedly stole a credit from another employee's pocketbook and used that card to make purchases over the next few days. On December 17, 2001, in the parking lot at the Broadway Mall, at gunpoint the

2

petitioner and two accomplices allegedly took money and a credit card from a woman.

On December 21, 2001, the petitioner and others allegedly took a wallet and cell

phone from a woman in the parking lot of a Stop & Shop on Old Country Road in

Hicksville, New York. During this incident on December 21, 2001, one of the

perpetrators repeatedly struck the victim over the head with a BB gun.

**B.**   **The Plea**

On August 12, 2002, the petitioner appeared with counsel and offered to plead

guilty to two counts of robbery in the first degree and to one count of forgery in the

third degree. In return for the petitioner's agreement to plead guilty, the prosecution

agreed to recommend a sentence of a prison term of fifteen years on the robbery

counts, to run concurrently with a prison term of one year on the forgery count. At the

plea hearing before the Honorable Daniel J. Cotter of the Nassau County Court, the

following colloquy took place:

> THE COURT:   Is the defendant ready to take the plea?
>
> MR. BIRNBAUM:   Your Honor, the defendant has asked me if the Court would consider coming down to ten years, in light of his age?
>
> THE COURT:   Only thing I can say, Counsel, I will review the probation report, okay? The DA is recommending 15. I have no problem with that recommendation. In all likelihood, if this defendant went to trial and was convicted, he would be getting 25. Now, I don't expect that I would run the sentences consecutively, but

3

he could get 25 on top of 25. This is a very serious case. I doubt very much that I am going to go any less than 15. I am going along with that, because the people are recommending it.

Now, I will keep an open mind as to the probation report, but I don't want to mislead anybody. In all likelihood, 99 percent he's going to the [sic] 15 years. I will run it concurrent with the four. I don't see any reason or anything that I m aware of that's going to make me do less, but I will look at the report. This is very, very serious and I don't want to mislead the defendant. In all likelihood, it's going to be the 15 and it's up to him. I know it's a big number. He's a young man, but these are very serious charges and look, he's going to pay the price for what he did.

\* \* \*

THE COURT:        Mr. Oguntunji, have you completely discussed the facts of your case with your lawyer?

THE DEFENDANT: Yes.

\* \* \*

THE COURT:        Have you had enough time to speak with your attorney before pleading guilty?

THE DEFENDANT: Yes.

\* \* \*

THE COURT:        Has anyone made any threats or in any way tried to force you to pled [sic] guilty today?

4

THE DEFENDANT: No.

* * *

THE COURT: Has anyone made any threats to force you to waive your right to appeal?

THE DEFENDANT: No.

* * *

THE COURT: Now, Mr. Oguntunji, I have had a conference with your attorney and the district attorneys and I am making a commitment and promise to you that the maximum sentence you will receive is the 15-year determinate sentence. I will make that sentence concurrent with the one-and-a-third-to-four-year sentence you are currently serving and I will sentence you to one year on the forgery charge, concurrent with all the sentences.

. . . . Now, do you understand my sentence commitment?

THE DEFENDANT: Yes.

THE COURT: Has anyone else made you any different promises about your sentence?

THE DEFENDANT: No.

THE COURT: All right, now, if, after reviewing the probation report, for any reason, I cannot or choose not to keep the commitments I have made to you, I will give you permission to take your plea back and you can go to trial. Do you understand that?

5

THE DEFENDANT: Yes.

(Plea Tr. at 3-4; 8-12.) At that point, the petitioner admitted robbing a woman at gunpoint on December 17, 2001 at the Broadway Mall in Hicksville; robbing another woman at gunpoint outside a Stop & Shop on Old Country Road in Hicksville on December 21, 2001; and using a credit card that belonged to someone else on August 10, 2001, and signing the credit slip with that person's name. Also, the petitioner denied causing injury to the victim of the December 21, 2001 robbery, but acknowledged that a person he was with hit the victim with a gun. The court accepted the petitioner's plea.

## C.     The Sentence

On September 20, 2002, the petitioner appeared with counsel for sentencing. The petitioner's counsel informed the court that the petitioner requested that he make an application for an adjournment so that he could make a motion to withdraw the plea.

> MR. BIRMBAUM:     Your Honor, the basis surrounding the application, and I think you would like to put it in writing, is that Mr. Oguntunji felt pressured at the time he came in here and that the plea was taken August 12th of this year.
>
> There was another matter for which Mr. Oguntunji had been sentenced previously. The time was running on that so that he was facing consecutive sentence and there was

6

dead time so, he has been sitting in jail not receiving jail time and credit.

The Court made a conditional promise in this matter of maximum 15 years. I explained to Mr. Oguntunji, of course, the Court would keep an open mind and listen at the time of sentence and he could get less. He is extremely upset. He feels that the co-defendants were treated extremely disparate from himself and that he just felt pressured and he didn't understand what occurred on August 12th.

Is that correct?

THE DEFENDANT: Yes.

THE COURT: Counsel, this is -- was conferenced I can't even think how many times. The offers that were made to previous counsel and discussed with the defendant remain consistent throughout this entire proceeding. I granted the defendant a number of adjournments when you came in on the case very late so that you could fully go over this with the defendant, explain everything to him. The district attorney kept his offers open and I kept my sentence commitments open. We have discussed it, I can't even remember how many times, too many to believe, that he felt there was nothing new that happened. He was advised of that sentencing and the loss of credit if he continued with the not pleading on this most recent case, and I see nothing here based on the allocution made at the time of the plea that would warrant any further consideration, and the defendant's application to withdraw his pleas or for an adjournment to

7

> put that application in writing is denied. We
> are going to proceed with sentence.

(Sentencing Tr. at 2-4.)

Having denied the petitioner's application for an adjournment or for permission to withdraw the plea, the court sentenced the petitioner on each of the two robbery counts to which he plead guilty to two determinate terms of imprisonment of fifteen years each, and on the forgery count to a term of one year, all concurrent. The Court notes that the sentencing transcript references a count of "petty larceny" rather than forgery, and presumes this to be an error.

On April 5, 2004, the New York State Supreme Court, Appellate Division, Second Department, affirmed the conviction and sentence. People v. Oguntunji, 6 A.D.3d 463, 774 N.Y.S.2d 351 (2d Dep't 2004). The Appellate Division ruled that:

> Contrary to the defendant's contention, the record demonstrates that his pleas of guilty and waivers of his rights, including, inter alia, his right to appeal, were voluntarily, knowingly, and intelligently made. They were not coerced by the County Court's response to his inquiry as to the possibility of a lesser sentence. The County Court did not state that it would definitely impose the maximum allowable sentence if he went to trial and was convicted. In fact, it explicitly appears to have left open the possibility that it might impose the same sentence the defendant received as a result of his plea bargain.

Id. (citations omitted). The petitioner's remaining claims were "without merit."

On July 7, 2004, the New York Court of Appeals denied leave to appeal, People v. Oguntunji, 3 N.Y.2d 661, 816 N.E.2d 576, 782 N.Y.S.2d 703 (2004). The

8

Court notes that the only ground asserted in the petitioner's application for leave to appeal to the Court of Appeals is that his pleas were coerced.

## II.    DISCUSSION

As an initial matter, the Court notes that the petitioner is acting <u>pro se</u>. Thus, the Court will liberally construe his submissions in his favor. <u>See</u> <u>Chang v. United States</u>, 250 F.3d 79, 86 & n.2 (2d Cir. 2001).

The petitioner seeks to vacate the judgment of conviction and sentence, imposed following his plea of guilty before Judge Cotter on grounds that (1) his pleas were involuntary; (2) one of the state court accusatory instruments was defective because it improperly contained a charge of sexual abuse; and (3) his sentence was excessive. The first ground, namely that his pleas were involuntary, was raised before the Appellate Division and the Court of Appeals. Thus, it is properly exhausted. The petitioner's second and third grounds were submitted to the Appellate Division, but do not appear to have been included in the petitioner's motion for leave to appeal to the Court of Appeals.

### A.    The Standard of Review

The Antiterrorism and Effective Death Penalty Act (the "AEDPA") provides that a federal court may grant habeas relief to state prisoners with respect to any claim that was adjudicated on the merits in state court proceedings only if the adjudication of the claim:

9

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also DeBerry v. Portuondo, 403 F.3d 57, 66 (2d Cir. 2005); Wade v. Herbert, 391 F.3d 135, 140 (2d Cir. 2004). A state court's factual findings enjoy a "presumption of correctness" that the petitioner must rebut by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); DeBerry, 403 F.3d at 66.

"A state-court decision is 'contrary' to clearly established federal law within the meaning of § 2254(d)(1) if it is 'diametrically different' from, 'opposite in character or nature' to, or 'mutually opposed' to the relevant Supreme Court precedent." Henry v. Poole, 409 F.3d 48, 68 (2d Cir. 2005) (quoting Williams v. Taylor, 529 U.S. 362, 405, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)). "A state court decision involves 'an unreasonable application' of clearly established Federal law if the state court applies Federal law to the facts of the case in an objectively unreasonable manner." Brisco v. Phillips, 376 F. Supp. 2d 306, 311 (E.D.N.Y. 2005); see Brown v. Payton, 544 U.S. 133, 125 S. Ct. 1432, 1439, 161 L. Ed. 2d 334 (2005) (citing Williams, 529 U.S. at 405, 120 S. Ct. 1495, 146 L. Ed.2d 389); Serrano v. Fischer, 412 F.3d 292, 296 (2d Cir. 2005) (citations omitted). "[I]it is well-established in [this] Circuit that the 'objectively unreasonable' standard of § 2254(d)(1) means

10

that [a] petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." Rosa v. McCray, 396 F.3d 210, 219 (2d Cir. 2005) (citing Cotto v. Herbert, 331 F.3d 217, 248 (2d Cir. 2003)). Under the AEDPA, a court does not decide "whether the state court correctly interpreted the doctrine of federal law on which the claim is predicated, but rather whether the state court's interpretation was unreasonable in light of the holdings of the United States Supreme Court at any time." Brown v. Greiner, 409 F.3d 523, 533 (2d Cir. 2005); see also Williams, 529 U.S. at 405, 120 S. Ct. at 1495.

It is well-settled that "federal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780, 110 S. Ct. 3092, 111 L. Ed. 2d 606 (1990)). In this regard, the United States Supreme Court opined that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." See Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). On the contrary, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. at 68, 112 S. Ct. 475 (citations omitted).

### B.  Exhaustion

Where " 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts

also must deem the claims procedurally defaulted." See Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001) (quoting Coleman v. Thompson, 501 U.S. 722, 735 n.1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)). The Court will not review the merits of a procedurally defaulted claim unless the petitioner can show (1) cause for the default and actual prejudice resulting therefrom; or (2) that failure to consider the claim will result in a fundamental miscarriage of justice. See Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994).

Under New York law, the petitioner is not entitled to seek review of the trial and appellate courts' rejection of those claims that he did not include in his application for leave to appeal to the Court of Appeals. See Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001) (citing 22 N.Y.C.R.R. § 500.10(a) (failing to raise issues before Court of Appeals precludes further review because the petitioner has already made the one application for leave to appeal to which he is entitled); N.Y. Crim. Proc. Law § 440.10 (barring collateral review if claim could have been raised on direct appeal or in prior 440 motion)); see also Bossett, 41 F.3d at 829.

Here, the petitioner did not raise his claims relating to the accusatory instrument or the appropriateness of his sentence in his application for leave to appeal to the Court of Appeals. The petitioner has not alleged facts sufficient to show cause, prejudice, or a miscarriage of justice for failing to present these his claims. Accordingly, these claims are unexhausted and can be dismissed on that ground.

P-049

Notwithstanding the exhaustion requirement, a habeas court has the power to deny a petition on the merits even where there has not been exhaustion. See 28 U.S.C. § 2254(b)(2). Here, the Court has determined that it is proper to deny the petitioner's two unexhausted claims on the merits.

The sufficient of the accusatory instrument filed against the plaintiff is a question of state law, and such questions are not cognizable on federal habeas review. Estelle v. McGuire, 502 U.S. 62, 67, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991); Schwartz v. Connell, No. 05-cv-10305, 2006 WL 3549660, at *3 (S.D.N.Y. Dec. 6, 2006); Melendez v. Garvin, 256 F. Supp. 2d 183, 185 (S.D.N.Y. 2003); Tucker v. McCoy, No. 00-cv-6435, 2004 WL 1698334, at *6 (W.D.N.Y. July 29, 2004). Here, the Appellate Division held that the petitioner's claim regarding the information was "without merit." That decision, had it been properly exhausted, would not be subject to review in this Section 2254 proceeding.

Regarding the length of the petitioner's sentence, it is well-settled that a constitutional claim for excessive sentence cannot prevail where the sentence imposed falls within the range prescribed by state law. White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); Pena v. Rivera, No. 05-3109, 2006 WL 2265078, at *8 (S.D.N.Y. July 31, 2006); Brown v. Duncan, No. 00-0290, 2006 WL 1977469, at *16 (N.D.N.Y. July 11, 2006); Brown v. Goord, No. 02-2122, 2002 WL 31093611, at *5 (S.D.N.Y. Sept. 13, 2002). The petitioner received a concurrent sentence of fifteen years in prison on

13

each count of robbery in the first degree, and a prison term of one year for forgery in

the third degree. These sentences fall within the guidelines prescribed by the New

York State Legislature. N.Y. Penal Law §§ 70.00(3), 70.15, § 160.15, 170.05.

Accordingly, this claim is also dismissed on the merits.

### C. As to the Voluntariness of the Petitioner's Pleas

The Second Circuit has recently recited the standard regarding guilty pleas.

> A guilty plea operates as a waiver of important rights, and is valid
> only if done voluntarily, knowingly, and intelligently, with sufficient
> awareness of the relevant circumstances and likely consequences.
> Bradshaw, 545 U.S. 175, 125 S. Ct. at 2405; (quoting Brady v. United
> States, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970)
> (internal quotation marks omitted)). A court may not accept a plea
> "without an affirmative showing that it was intelligent and
> voluntary." Boykin, 395 U.S. at 242, 89 S. Ct. 1709; Brady, 397 U.S.
> at 747 n.4, 90 S. Ct. 1463 (no ting that Boykin stands for the
> proposition that the "record [on appeal] must affirmatively disclose
> that a defendant who pleaded guilty entered his plea understandingly
> and voluntarily."). While a trial judge is required to make a record
> that affirmatively discloses that the defendant's guilty plea is
> intelligent and voluntary, he or she is not required by federal law to
> engage in any particular interrogatory "catechism" akin to that
> required of federal courts by Federal Rule of Criminal Procedure 11.
> See Siegel v. New York, 691 F.2d 620, 626 (2d Cir. 1982). The
> voluntariness of a guilty plea is reviewed by examining the totality of
> the relevant circumstances. Willbright v. Smith, 745 F.2d 779, 780
> (2d Cir. 1984) (per curiam) (citing Brady, 397 U.S. at 749, 90 S. Ct.
> 1463).

Hanson v. Phillips, 442 F.3d 789, 798 (2d Cir. 2006). The petitioner contends that his

plea was the product of coercion, and not entered knowingly and voluntarily, because

14

the sentencing court advised him that he would be sentenced to the maximum penalty permitted by law if he did not plead guilty and instead chose to go to trial.

The Court disagrees with the petitioner's contention, as the Appellate Division did, that the sentencing court told him it would sentence him to the maximum penalty if he did not plead guilty. Judge Cotter stated: "In all likelihood, if this defendant went to trial and was convicted, he would be getting 25. Now, I don't expect that I would run the sentences consecutively, but he could get 25 on top of 25. This is a very serious case." (Sentencing Tr. at 3-4.) As the Appellate Division stated, this statement does not unequivocally convey that the sentencing court would definitely impose the maximum allowable sentence.

It is not coercion if a defendant pleads guilty to avoid a harsher sentence. Brady v. United States, 397 U.S. 742, 752-53, 90 S. Ct. 1463, 1471, 25 L. Ed. 2d 747 (1970). "While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'-and permissible-'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.' " Bordenkircher v. Hayes, 434 U.S. 357, 364, 98 S. Ct. 663, 668, 54 L. Ed. 2d 604 (1978) (quoting Chaffin v. Stynchcombe, 412 U.S. 17, 31, 93 S. Ct. 1977, 1985, 36 L. Ed. 2d 714 (1973)); see also Gomez v. Duncan, No. 02-CV-0846, 2004 WL 119360, at *20 (S.D.N.Y. Jan. 27, 2004) (holding that the court's statements to the petitioner that,

15

essentially, "if he sentenced [the petitioner's] co-defendant Pena to two consecutive terms of 15 years to life for the attempted murder counts, he intended to give [the petitioner] the same if he was convicted after trial" was not coercive); Oyague v. Artuz, 274 F. Supp. 2d 251, 258 (E.D.N.Y. 2003) (holding that a guilty plea was not coerced where the petitioner claimed that the trial court told him that if he was convicted after trial "he would spend the rest of his life in prison because he would be facing a likely 65 years to life sentence. Assuming the conversation took place, there is no allegation that the trial court did not believe that its statements were accurate or that the court was motivated by anything but a desire to fully inform petitioner of the consequences of going to trial."); Smith v. Scully, Nos. 02-CV-6329, 02- MISC-0066, 2003 WL 22952848 (E.D.N.Y. Oct. 16, 2003) (holding that, in light of the trial court's discussion of the petitioner's probation report and extensive criminal record, the court's statements in response to the petitioner's motion to withdraw his plea that " 'I'm going to tell you now, if you get convicted by a jury, you're going to get the maximum sentence. . . . Did you listen to me? You've been playing games with the Court' " had "more of a flavor of notice than threat."); People v. Robinson, 287 A.D.2d 398, 731 N.Y.S.2d 709 (1st Dep't 2001) ("There was nothing coercive about the court's discussion of the permissible scope of sentencing in the event of a conviction after trial.").

16

Having reviewed the transcript of the plea hearing, the Court holds that there was no coercion in this case. There is no indication that the petitioner's plea was not knowing, intelligent, and voluntary. The petitioner was represented by counsel at his plea, and authorized his counsel to withdraw his plea of not guilty and enter a plea of guilty. The petitioner stated on the record that he had enough time to speak to his attorney before pleading guilty and that they had completely discussed the matter. The petitioner also acknowledged that he understood that he had a right to trial by jury at which he would be assisted by counsel and at which the district attorney would have to prove his guilty beyond a reasonable doubt; that he has a right to confront witnesses against him; that he would not have to testify on his own behalf; that he had a right to appeal; and that by pleading guilty he would be giving up those rights.

When asked if he understood that a plea of guilty is the same as being convicted by a jury trial the petitioner answered "yes." The petitioner stated that no one made any threats or in any way tried to force him to plead guilty or waive any of his rights, including his right to appeal. The petitioner also stated that no one other than the sentencing court made any promises to him regarding his potential sentence. The sentencing court also questioned the petitioner regarding the nature of the charges that he was pleading guilty to, and the petitioner stated that he understood them. Judge Cotter's statements to the petitioner about the maximum sentence he could receive if he went to trial and was convicted were, as Judge Weinstein found in Scully, 2003 WL

17

22952848, more in the nature of notice than a threat when considered in context with the rest of the Judge's comments.

In sum, the Court finds that the petitioner's guilty pleas were made voluntarily, knowingly, and intelligently. It appears from the transcript of the sentencing proceeding that the petitioner's regret concerning his pleas was motivated more by anger at what he perceived to be the more favorable treatment of his co-defendants, than by coercion by Judge Cotter or anyone else. Thus, this claim that his guilty plea was not voluntary is dismissed. Accordingly, the petition for habeas corpus is denied.

## III.   CONCLUSION

For the reasons stated above, Adewumi Oguntunji's petition for a writ of habeas corpus is denied. Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2253(c)(2), a certificate of appealability is denied, as the petitioner failed to make a substantial showing of a denial of a constitutional right. Miller-El v. Cockrell, 537 U.S. 332, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003).

The Clerk of the Court is directed to close this case.

**SO ORDERED**.

Dated: Central Islip, New York
      March 26, 2007

ARTHUR D. SPATT
United States District Judge

18